# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON


**United States of America,**

       *Plaintiff*,

**v.**                **Case No.  3:08-cv-348**
                   **Judge Thomas M. Rose**

**City of Dayton,**

       *Defendant*.

---

**ENTRY AND ORDER GRANTING IN PART MOTION OF FRATERNAL ORDER OF POLICE, CAPTAIN JOHN C. POST LODGE 44 AND INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 136 TO INTERVENE AS DEFENDANTS. DOC. 7**

---

Pending before the Court is a motion to intervene by the Fraternal Order of Police, Captain John C. Post Lodge 44 and International Association of Firefighters Local 136.  Doc. 7. The instant case was brought by the United States of America against the City of Dayton, Ohio, alleging that Dayton's hiring practices for police and firefighters disparately impacted African-Americans in violation of § 707 of Title VII.

The original parties have proposed to the Court a Consent decree that would resolve their dispute, and which envisions a process that would culminate in a fairness hearing by the Court that would determine whether the consent decree was "lawful, fair, adequate, and reasonable." Doc. 21.  Part of this process envisions a relief of remedial retroactive seniority for affected members of the class.

The United States only partially opposes the Unions' motion, allowing that the Unions should be allowed to raise their concerns about the retroactive seniority relief provided by the consent decree during the fairness hearing that has been proposed.  Doc. 19.  The City of Dayton fully opposes it.  Doc. 20.

## A.    Background

On September 26, 2008, the United States filed its complaint in this suit alleging that the City was engaged in a pattern or practice of discrimination against African Americans on the basis of race with respect to employment opportunities in the City's police and fire departments in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  More specifically, the United States alleges in its complaint that the City's use of an internally created written police officer examination and its use of heightened minimum qualifications for firefighters (*e.g.,* requiring that applicants have EMT-Basic and Firefighter I and II certifications at the time they apply) had a disparate impact on African Americans, and that neither practice has been demonstrated by the City to be job-related and consistent with business necessity, as required by Title VII.  The United States' complaint does not allege that the Unions are liable or responsible in any way for the City's selection processes that are challenged in the complaint.

After the filing of the United States' complaint, the parties stayed proceedings to discuss settlement. On February 26, 2009, the United States and the City submitted to the Court a proposed Consent Decree ("Decree"), along with a Joint Motion for Provisional Approval of Consent Decree and Scheduling of Fairness Hearing ("Joint Motion"). Docket Nos.16 and 17.  Under the terms of the Decree, the City would be enjoined from using any policy or practice in its police officer and firefighter selection procedures that has the purpose or effect of unlawfully discriminating on the

basis of race against any African American, in violation of Title VII. Specifically, the City is enjoined from using the written police officer examination administered in 2006 and the heightened minimum firefighter qualifications adopted in 2004 as part of its screening and selection processes for entry-level police officers and firefighters. The Decree further requires that the City develop new selection procedures for hiring entry-level police officers and firefighters that comply with Title VII.

In addition, the Decree provides remedial relief to African Americans who were harmed by the challenged selection procedures, including backpay, consideration for an offer of priority hire, retroactive seniority, and the opportunity to receive retroactive pension credit. The Decree requires the City to hire up to five eligible African Americans to the position of police officer and up to nine eligible African Americans to the position of firefighter. *See* Decree (Docket No. 16, Ex. 3) at ¶ 64.

Under the processes outlined in the Decree, the United States and the City will identify claimants who are eligible to be considered to receive an offer of priority hire from the City. The City will have an opportunity to screen the claimants eligible for consideration for priority hire to assure that they meet the lawful qualifications for the positions required of all other police officers and firefighters. *Id.* at ¶ 61. The Decree does not require that the City hire any claimant who is not currently qualified for the position of police officer or firefighter. Each claimant hired will, upon completion of his or her probationary period, be credited with a retroactive seniority date that is to be used by the City as the claimant's date of hire for all purposes except the necessary time-in-grade to be eligible for consideration for promotion. *Id.* at ¶ 66. In addition, the Decree provides that four incumbent police officers whose hiring was delayed due to the challenged selection process would receive retroactive seniority to the date they should have been hired. *Id.* at ¶¶ 36-37. Those four

police officers will be credited with a retroactive seniority date that is to be used as their date of hire for all purposes except the necessary time-in-grade to be eligible for consideration for promotion.

Under the Decree, it is possible that some African Americans who receive individual remedial relief may eventually be credited with retroactive seniority dates that are earlier than the seniority dates of some current incumbent employees who are members of the Unions.

Two fairness hearings are provided for by the Decree. At the initial fairness hearing, the Court will determine whether the terms of the Decree are lawful, fair, reasonable and adequate, and consistent with the public interest. *See id.* at ¶¶ 22, 27, 48, 52; 42 U.S.C. § 2000e-2(n)(1). Prior to the initial fairness hearing, individuals whose interests may be affected by the Decree – including incumbent employees of the police and fire departments and the Unions – will be given notice of the Decree and an opportunity to file objections with the Court. At the initial fairness hearing, even without permission to intervene, the Unions would have an opportunity, along with other objectors, to raise their concerns about the Decree. Decree (Docket No. 16, Ex. 3) at ¶¶ 23-24.

The Decree also provides that, after the completion of a claims process whereby the parties identify individuals who are eligible to receive monetary and/or priority hiring relief, the Court will hold a second fairness hearing on individual relief. The purpose of that fairness hearing is for the Court to hear and resolve objections concerning the individual relief that the United States proposes be awarded to each claimant.

By letter, dated December 31, 2008, to the United States and the City, the Unions requested that they be permitted to participate in the ongoing settlement discussions between the parties. Union Mem., Ex. 8 (12/31/08 Letter from S. Jansen to B. Thawley and J. Danish) at 2. In that letter, the Unions identified a number of issues that they sought to address during those settlement

discussions of the instant case, including: (1) their position that "any consent decree" resolving this case "should address the concerns of all minorities such as females, Hispanics, and all other racial and ethnic groups, not just African Americans, in order to eliminate future controversy," (2) a moratorium on the application of the City's residency rule, (3) an increase in the number of supervisory positions in the police and fire departments, (4) an increase in "the authorized manpower" for the police and fire departments, and (5) Union participation in any discussions regarding the development of new selection devices for police officers and fire fighters. Union Mot., Ex. 8 at 2.

A few business days later, on January 6, 2009, the Unions filed the instant motion seeking to intervene as of right pursuant to Fed. R. Civ. P. 24(a), or alternatively seeking permissive intervention pursuant to Fed. R. Civ. P. 24(b). As with their December 31, 2008 letter, the Unions asserted a number of "interests" that they claim are implicated by this suit and, therefore, justify their intervention. Specifically, the Unions identified three categories of interests they contend are implicated by this suit: (1) an interest in assuring "that the seniority of their current members and the seniority-based promotional schemes embodied in their current collective bargaining agreements are followed," Union Mem. at 9; (2) a safety interest in assuring that police officers and firefighters hired by the City are competent, *id.* at 10; and (3) an interest in assuring that police and fire department promotions are "based on records of 'merit, efficiency, character, conduct, and seniority'" in accordance with the City Charter and the rules of the City's Civil Service Board and in "maintaining the integrity of the Civil Service Board system." *Id.* at 9, 11.

**B.      Analysis**

Intervention as of right is governed by Fed. R. Civ. P. 24(a), which states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). The Sixth Circuit has established a four-part test for determining whether intervention as of right should be granted: (1) the motion for intervention is timely; (2) the proposed intervenors have a substantial legal interest in the subject matter of the pending litigation; (3) the proposed intervenors' ability to protect their interest may be impaired in the absence of intervention; and (4) the interest is not adequately represented by an existing party to the litigation. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007), *cert. denied sum nom, Michigan Civil Rights Initiative Comm. v. Coalition to Defend Affirmative Action*, 129 S.Ct. 35 (2008); *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). The Court will turn its attention to the consideration of these factors.

**1.      Timeliness**

By letter, dated December 31, 2008, to the United States and the City, the Unions requested that they be permitted to participate in the ongoing settlement discussions between the parties. Union Mem., Ex. 8 (12/31/08 Letter from S. Jansen to B. Thawley and J. Danish) at 2. In that letter, the Unions identified a number of issues that they sought to address during those settlement discussions, several of which are beyond the Unions' protectable interests and the scope of this suit. The instant motion to intervene was filed with the Court January 6, 2009. Doc. 7.

The Court finds that the motion was timely filed. The complaint in the instant case was filed September 26, 2008. Doc. 1. As the matter was stayed to allow for settlement negotiations, the motion to intervene was filed prior to any answer being filed.

**2.      Legal Interest of the Intervenors**

While movants assert that they have a substantial legal interest in the litigation, and Defendant the City of Dayton asserts that Movants have no such interest, Plaintiff the United States of America supports allowing limited intervention with respect to the narrow issue of the effect that remedial retroactive seniority relief proposed under the submitted Consent Decree might have on the collective bargaining agreements between the Unions and the City. The Court notes that the only provisions of the Decree that implicate the Unions' legally protectable interests are those that provide retroactive seniority relief to African Americans who are determined to have been harmed by the employment practices challenged by the United States. *Id.* at ¶ 36, 59- 67.

The scope of intervention should be limited to the scope of an intervenor's interests. *Kirkland v. New York State Dept. Of Corr. Servs.,* 711 F.2d 1117, 1126 (2d Cir. 1983) (citing *Boston Tow Boat Co. v. United States*, 321 U.S. 632 (1944)); *EEOC v. American Telephone and Telegraph Co., et al.*, 506 F.2d 735, 741 (3d Cir. 1974) (intervention limited to intervenors' direct interests arising from collective bargaining agreements); *Grubbs v. Norris*, 870 F.2d 343, 346-47 (6th Cir. 1989) (permitting intervention for the purpose of addressing a court-ordered remedy because the intervenor had a discrete interest arising from the remedy).

The Unions' interest in this case is limited to the scope of the remedy devised. See *Kirkland*, 711 F.2d at 1126. See also *Howard v. McLucas*, 782 F.2d 956, 960-61 (11th Cir. 1986) (recommending limitation that "The only issue intervenors shall be permitted to raise on remand

is their contention that white and non-black employees will not be considered for promotion to the 240 target positions on an equal basis with nondiscriminatee black employees solely on account of race." and "the district judge should limit discovery narrowly to the single issue which intervenors are permitted to address and set and enforce strict time limits for its accomplishment.")

The strongest reason the Unions' motion to intervene puts forward is its interest in the proposed consent decree in this case. See Doc. 7 at 9-10. While the Unions argue that the qualifications of new hires affects the interest of its members in their safety, at the liability stage, this interest is adequately represented by the City. See *United States v. City of New York*, 2007 U.S. Dist. LEXIS 65668, *11 (E.D.N.Y Sept. 5, 2007).

### 3.    Ability to Protect Their Interest in the Absence of Intervention

At first blush this factor weighs slightly against allowing intervention. As the proposed consent decree envisions fairness hearings at which the Unions would be allowed to voice its opinion concerning the reasonableness and fairness of any remedy, the Court would hear the Unions position even without intervention. The Court recognizes, however, that without permission to intervene, the Unions would not have the right to appeal any decision rendered, inviting the possibility of parallel litigation. Thus, the Court finds that this factor weighs in favor of allowing intervention for the limited purpose of contesting the remedy devised.

### 4.    Whether the Interest is Adequately Represented by Existing Parties

The Court recognizes that the City and the Unions have been engaged in an on-going battle over the propriety of granting preferential treatment to members of minority groups for employment and promotion opportunities. See cases cited in Doc. 7 at 13-14. This factor thus weighs in favor of allowing intervention.

**C.**     **Conclusion**

Weighing the factors, the Court concludes that intervention limited to the ability to object to any proposed remedy at the fairness hearings as a matter of right is warranted. The Clerk is ordered to add the Unions to the case as an intervening defendant, with the right only to submit objections to any settlement and the right to appeal any ruling on the fairness of a settlement. While the Unions will be privy to the documents and information exchanged between the parities in developing a remedy, the Unions will not have the right to demand discovery themselves. Thus, the Court **GRANTS IN PART** Motion of Fraternal Order of Police, Captain John C. Post Lodge 44 and International Association of Firefighters Local 136 to Intervene as Defendants. Doc. 7.

**DONE** and **ORDERED** in Dayton, Ohio this Tuesday, April 14, 2009.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE